IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| ANTHONY CLINCH,<br><br>    Plaintiff,<br><br>    v.<br><br>PAMELA CHAMBERS, STEPHANIE OLIVER and GLYNN COUNTY,<br><br>    Defendants. | Civil Action No.  CV 222-094<br><br>**Jury Trial Demanded** |

Plaintiff Anthony Clinch brings this action against defendants Pamela Chambers, Stephanie Oliver, and Glynn County ("Defendants") and alleges as follows:

**FACTUAL BACKGROUND**

I.    **Defendant Oliver and Chambers' Excessive Force Against Plaintiff**

1. On May 24th, 2021, defendants Stephanie Oliver and Pamela Chambers responded to a call near Winn-Dixie in Brunswick, Georgia.

2. The call concerned a false report of a theft of a cell phone and keys.

3. Plaintiff was on his way to a friend's house and approached the back of the house where he knew the door to be unlocked.

4. Defendants Chambers and Oliver profiled Plaintiff because he was at the rear of a residential property and had possession of a cell phone and keys—none of which are crimes.

5. Defendant Oliver approached Plaintiff aggressively, yelling at him to get on the ground, and immediately drew her taser and aimed it at Plaintiff.

6. Plaintiff, obviously confused, stood in place and did not exhibit any signs of active resistance or aggression.

1

7. Plaintiff calmly asked, "What you got a taser our for?" and "What's going on?"

8. Defendant Oliver repeatedly screamed "stop, I'm going to tase you!"

9. Plaintiff—who was standing still and could not be expected to "stop" any further—repeatedly asked, "For what? What's going on?"

10. Defendant Chambers then rushed at Plaintiff from behind, began yelling more instructions, and grabbing Plaintiff's arms.

11. Defendants Chambers and Oliver simultaneously yelled multiple conflicting instructions to Plaintiff, instructing him to, among other things, stop, get on the ground, and put his hands behind his back.

12. Defendant Oliver then fired her taser at Plaintiff while he still was not exhibiting any signs of active resistance or aggression.

13. Defendants Chambers and Oliver then both began wrestling Plaintiff to the ground in a haphazard manner, at various times pulling him in opposite directions, using a potentially lethal choke hold, and otherwise displaying poor body control and physical intervention techniques.

14. At no point did Defendant Oliver or Defendant Chambers make any effort to de-escalate the situation prior to their use of force.

15. They refused to offer Plaintiff any basic explanation as to why the two officers had rushed upon a peaceful citizen with a weapon drawn, shouting multiple conflicting instructions, and immediately engaged in the use of physical force.

16. Defendants Chambers and Oliver temporarily released Plaintiff, who got back to his feet and again stood in place asking what was going on.

17. Despite the gross escalation of the situation by defendants Oliver and Chambers, Plaintiff still did not display signs of active resistance or aggression.

18. Defendant Oliver nonetheless kept her taser aimed at Plaintiff and kept yelling, "I'm about to tase you again!"

19. Plaintiff continued to ask, "For what?"

20. For approximately 30 seconds, Defendant Oliver had her taser aimed at Plaintiff's waistline, which would be the appropriate area to target if the use of a taser were appropriate at all.

21. Defendant Oliver then adjusted her aim upward and fired, striking Plaintiff in the throat.

22. Defendant Oliver was in no physical danger. She was facing Plaintiff who was standing still facing her. There is no reasonable explanation for defendant Oliver to fire her taser at Plaintiff's throat.

23. Plaintiff was severely injured and taken to the hospital for treatment and for removal of the taser dart from his throat.

## II. GCPD's Unconstitutional Use of Force Customs and Policies

24. Glynn County Police Department's ("GCPD") express, written policies instruct, or permit officers to use unnecessary, gratuitous, and disproportionate force against citizens as a matter of routine procedure when making arrests and searches.

25. GCPD's official use of force policies, including Policy 300, instruct GCPD officers to use force in the routine course of any and all "legitimate law enforcement purposes" regardless of whether such force, or any force, is necessary.

26. TASER International recommends deploying electronic control devices in the lower center of mass and advises that critical injury or death may occur if deployed into one's upper chest and neck.

27. The use of a taser in the upper chest, head, and neck area creates a substantial likelihood of causing death or serious bodily injury. Accordingly, such use of a taser must be treated as deadly force and only used to apprehend a suspected felon who possess a deadly weapon or poses an immediate threat of serious physical harm to the officer or someone else.

28. GCPD's Policy 304 nonetheless expressly permits the targeting of the head and neck with a taser on any suspect. It provides only that after applying a taser to the head, neck, chest, or groin, "officers should monitor the condition of the subject."

29. GCPD's official use of force policy makes no reference whatsoever to the *Graham* factors which every officer must consider determining whether and/or the extent to which physical force is reasonably necessary to make an arrest or search. Instead, it provides blanket authorization to officers to use varying degrees of physical force as a matter of routine procedure when making arrests and searches.

30. The United States Supreme Court has repeatedly emphasized that no force is authorized unless there exists an objectively reasonable need to use such force based on the extent of physical safety threat confronting the officer.

31. The use of even minimal physical force is not authorized "under normal circumstances."

32. GCPD's official written use of force policy directed GCPD officers to violate the Fourth Amendment by instructing officers to use unnecessary force as a matter of routine procedure to accomplish any departmental or police objective when making arrests and searches

4

"under normal circumstances," regardless of whether the suspect is handcuffed and/or not posing any physical threat.

33. A reasonable officer reading GCPD's written use of force policies would necessarily believe that she had blanket authorization to use force as a matter of routine procedure when making arrests and searches, including against handcuffed and non-resisting citizens.

**III.   GCPD's Unconstitutional Customs and Policies Regarding Officer Training**

34. Defendant Oliver's interaction with Plaintiff shows a complete lack of appropriate law enforcement training regarding, among other things:

   a. De-escalation;

   b. Physical intervention techniques; and

   c. Electronic control devices.

35. Additionally, Defendant Oliver's GCPD personnel files shows that she has not received any training at all since 2018.

36. Accordingly, pursuant to O.C.G.A. § 35-8-17, Defendant Oliver was prohibited from exercising the powers of a law enforcement officer generally and particularly the power of arrest.

**IV.   GCPD's Ratification of Defendant Oliver's Conduct**

37. GCPD is required to, and does, review all use of force incidents involving its officers.

38. GCPD reviewed Defendant Oliver's use of force against Plaintiff, found it to be acceptable, and took no disciplinary, corrective, or re-training action regarding Defendant Oliver.

39. Accordingly, GCPD has ratified Defendant Oliver's conduct and admitted that Defendant Oliver followed official Glynn County policy in her use of force against Plaintiff.

## PARTIES

40. Plaintiff Anthony Clinch is a resident of Georgia.

41. Defendant Stephanie Oliver is an individual who was a Police Officer with the Glynn County Police Department at all relevant times. Defendant Oliver acted within the course and scope of her employment with the Glynn County Police Department and acted under color of state law.

42. Defendant Pamela Chambers is an individual who was a Deputy with the Glynn County Sheriff's at all relevant times. Defendant Chambers acted within the course and scope of her employment with the Glynn County Sheriff's Office and acted under color of state law

43. Defendant Glynn County is a duly created and existing political entity under the laws of the state of Georgia that has the capacity to sue and be sued and is being sued in connection with duties that it owes as a county government.

## JURISDICTION AND VENUE

44. This Court has jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

45. Defendants are residents of the State of Georgia and are subject to the personal jurisdiction of this Court.

46. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the subject incident occurred in Brunswick, Georgia, which is located within the Southern District of Georgia.

## CLAIMS FOR RELIEF

**Count I:**    **42 U.S.C. § 1983 Violation of Fourth and Fourteenth Amendments by Defendants Chambers and Oliver**

47. Plaintiff incorporates paragraphs 1 through 46 as if fully stated here.

48. At all times relevant to this complaint, Defendant Oliver was a lieutenant with the GCPD.  Defendant Oliver was:

   a. Acting under color of law;

   b. Acting within the course and scope of her employment by Glynn County; and

   c. Acting pursuant to ordinances, regulations, customs, and policies of Glynn County.

49. At all times relevant to this complaint, Defendant Chambers was a deputy with the Glynn County Sheriff's Office.  Defendant Chambers was:

   a. Acting under color of law;

   b. Acting within the course and scope of her employment by Glynn County; and

   c. Acting pursuant to ordinances, regulations, customs, and policies of Glynn County.

50. Plaintiff had a clearly established constitutional right to be free from the use of excessive force.

51. Plaintiff had not committed any crime.

52. Plaintiff was unarmed.

53. Plaintiff did not pose any threat to the safety of the defendants or anyone else.

54. Nonetheless, Defendants Oliver and Chambers attacked Plaintiff in an attempt to tackle him, used a potentially lethal electronic control device against Plaintiff, and either recklessly or intentionally used the electronic control device in a potentially lethal manner.

55. There is no factual or legal justification for Defendants Oliver and Chamber's use of force against Plaintiff.

56. Defendants Chambers and Oliver's use of force against Plaintiff was objectively unreasonable, was not necessary for any legitimate law enforcement need, and was entirely punitive.

57. Additionally, Defendant Chambers had a constitutional duty to intervene in Defendant Oliver's use of excessive force and failed to do so.

58. Defendant Oliver similarly had a constitutional duty to intervene in Defendant Chamber's use of excessive force and failed to do so.

59. As a direct and proximate result of Defendants Chamber and Oliver's violation of Plaintiff's constitutional rights, Plaintiff suffered severe physical injury and pain.

**Count II:     Assault and Battery Pursuant to Georgia Law by Defendants Chambers, Oliver, And Glynn County**

60. Plaintiff incorporates paragraphs 1 through 46 above as if fully stated here.

61. Defendants Chambers and Oliver committed assault and battery against Plaintiff in violation of O.C.G.A. §§ 51-1-13 and 51-1-14 when they violently attacked and tased Plaintiff.

62. Defendant's Chambers and Oliver assault and battery directly and proximately caused Plaintiff injury and emotional pain and suffering.

63. Defendants Chambers and Oliver's attack on Plaintiff was intentional, malicious, and carried out with an intent to cause Plaintiff harm.

64. Accordingly, Defendants Chambers and Oliver's conduct was not protected by official immunity, and they are liable to Plaintiff for assault and battery under Georgia law.

65. An employer is vicariously liable for its employee's intentional tort if the tortious act was authorized by the employer prior to its commission, ratified after its commission, or committed within the scope of employment.

66. Accordingly, Glynn County is vicariously liable for Defendants Chambers and Oliver's assault and battery of Plaintiff.

**Count III: 42 U.S.C. § 1983 Violation of Fourth and Fourteenth Amendments by Glynn County**

67. Plaintiff incorporates paragraphs 1 through 46 as if fully stated here.

68. Glynn County was responsible for promulgating and enforcing customs, practices, policies, and procedures regarding the use of force by GCPD officers.

69. Glynn County enforced or allowed to exist policies and customs that permitted and encouraged the unreasonable use of force in violation of the fourth and fourteenth amendments.

70. Glynn County enforced or allowed to exist policies and customs that did not require officers to receive adequate use of force training.

71. Glynn County enforced or allowed to exist policies and customs that did not require officers to receive adequate training in the use potentially lethal electronic control devices.

72. Glynn County enforced or allowed to exist policies and customs that did not require officers to receive adequate training in de-escalation, verbal defusing techniques, and active listening skills.

73. Glynn County's promulgation and enforcement of inappropriate customs, practices, policies, and procedures, and failure to promulgate and enforce necessary customs, practices, policies, and procedures caused, among other things:

   a. GCPD officers to engage in reckless and unnecessarily dangerous use of force tactics;

   b. GCPD officers to escalate unnecessary emotional interactions with citizens;

   c. GCPD officers to fail to de-escalate emotional interactions with citizens; and

   d. GCPD officers to recklessly or intentionally use electronic control devices in a dangerous and lethal manner.

74. Glynn County policymakers reviewed Defendant Oliver's use of force against Plaintiff and determined that no disciplinary or corrective actions of any kind were warranted.

75. Accordingly, Glynn County has ratified Defendant Oliver's conduct and it is therefore chargeable to the county.

76. Glynn County's promulgation and enforcement of unconstitutional customs, practices, policies, and procedures directly and proximately caused Plaintiff serious injury, pain, and suffering.

## PUNITIVE DAMAGES AND ATTORNEYS' FEES

77. Defendants' conduct as described above shows willful misconduct, malice, fraud, wantonness, oppression, and an entire want of care which is sufficient to establish that Defendants acted with conscious indifference to the consequences of their actions.

78. Defendants acted with malice and/or reckless and callous indifference to Plaintiff's state and federal rights.

10

79. Accordingly, punitive damages should be imposed against pursuant to O.C.G.A. § 51-12-5.1 and other applicable laws to deter future violations of fundamental constitutional rights.

80. Defendants have acted in bad faith, have been stubbornly litigious, and/or have caused Plaintiff unnecessary trouble and expense, which entitle Plaintiff to attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

81. Plaintiff is additionally entitled to attorneys' fees pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that she have a trial before a jury on all issues and judgment against Defendants as follows

a. An award of compensatory damages for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

b. An award of punitive damages in favor of Plaintiff against Defendants Chambers, and Oliver;

c. An award of reasonable costs and attorneys' fees from all defendants; and

d. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

**DATED**:  September 27, 2022.

/s/ Eric S. Fredrickson
Eric S. Fredrickson
Georgia Bar No. 489783
Matthew S. Harman
Georgia Bar No: 327169

> **HARMAN LAW FIRM LLC**
> 3575 Piedmont Road, NE
> Bldg 15, Suite 1040
> Atlanta, GA 30505
> Telephone: (404) 554-0777
> Facsimile: (404) 424-9370
> Email:  mharman@harmanlaw.com
>        efredrickson@harmanlaw.com
>
> *Attorneys for Plaintiff*